THE INHABITANTS OF THE CITY OF PLAINFIELD, PROSECUTORS, v. THE COMMISSIONER OF MUNICIPAL ACCOUNTS, THE SINKING FUND COMMISSION OF THE INHABITANTS OF THE CITY OF PLAINFIELD, AND THE UNION COUNTY BOARD OF TAXATION, RESPONDENTS.

Submitted July 3, 1918—Decided November 6, 1918.

1. The Sinking Fund act of 1917 (*Pamph. L., p.* 757) was intended to deal with and remedy an existing situation by applying uniform rules to the amortization of municipal bonds, outstanding as well as those thereafter to be issued, and under the expert supervision of an officer specially appointed for that purpose with state-wide powers.

2. The Sinking Fund act of 1917 (*Pamph. L., p.* 757) does not impair the obligation of a municipality's contract with bondholders because it makes provision for the payment of the bonds by gradually accumulating the money to pay for such bonds in a sinking fund.

3. The determination of the question whether municipal bonds are to be classified as serial bonds or term bonds must depend upon the definition of those words as laid down in the statute itself rather than by the meaning ordinarily placed upon them in the business world.

On *certiorari.*

Before Justices PARKER and MINTURN.

For the prosecutors, *Charles A. Reed.*

For the respondents, *Herbert Boggs,* assistant attorney-general.

The opinion of the court was delivered by

PARKER, J. This writ brings before us an order made by the commissioner of municipal accounts of this state, an official whose office seems to date from the approval of chapter 154 of the laws of 1917 (*Pamph. L., p.* 472) which was amended in the present year. *Pamph. L.* 1918, *p.* 1003.

These acts, especially that of 1918, confer upon the commissioner very large powers with relation to the control and management of the finances of municipalities, and an important purpose of the statute is evidently to secure uniformity and efficiency in the management of municipal finances under the supervision of a state agency. Among the matters committed to the supervision of the commissioner is that of the sinking funds of the various municipalities, with respect to which specific legislation was also enacted in 1917. *Pamph. L., p.* 749.

In the performance of his duties under these various statutes, the commissioner proceeded to examine the accounts of the city of Plainfield, especially in relation to a sinking fund, and as the result of such examination made, pursuant to section 15 of the Sinking Fund act (*Pamph. L.* 1917, *p.* 757), a certificate that it was necessary for the city of Plainfield to raise the sum of $23,068.60 for sinking fund purposes as part of its annual budget for 1918. Apparently this certificate was disregarded by the city, and on May 8th, 1918, the commissioner made an order requiring the governing body of Plainfield to cause the above amount to be included in its budget of appropriations or tax ordinance and in the tax levy of said city for 1918. This order and the proceedings leading up to it are now brought before us for review.

We do not understand that there is any denial of the jurisdiction of the commissioner to make such an order in a proper case; the argument seems to be designed to show that the order, in part or whole, was not justified by the conditions found by the commissioner; and certain statutory and constitutional questions are also raised.

Before proceeding to a discussion of the specific points raised, it is important to note that the Sinking Fund act of 1917 establishes certain statutory definitions of and distinctions between what are therein called "serial bonds" and "term bonds;" and that the difference between the statutory definitions of such bonds and the meaning of the terms in ordinary acceptation gives rise to much of the dispute in the case. The statutory definition is very short and may be as

well quoted in full as contained in article 1 of section 1 of the act. *Pamph. L.* 1917, *p.* 749. It reads as follows:

"For the purposes of this act, such bonds as are payable in installments in successive years during at least three-quarters of the period covered by the term of the whole issue shall be known as 'serial' bonds. All other bonds shall be known as 'term' bonds."

It will be observed that the class designated serial bonds by the statute is necessarily much restricted and does not include bonds payable by installments unless the installments are to run for at least three-quarters of the period covered by the term "of the whole issue." Bearing these definitions in mind we proceed to an examination of the points made.

The first point is that the Sinking Fund act of 1917 was not intended to apply to bonds already issued and in the hands of purchasers at the time the act was passed. We find, however, nothing in its language or implications to justify such a conclusion. The act is a broad one and is entitled "An act relating to sinking funds and sinking fund commissions." It is evidently remedial in its character. Quite plainly, in our judgment, it was intended to deal with and remedy an existing situation by applying uniform rules to the amortization of municipal bonds, outstanding as well as those thereafter to be issued, and under the expert supervision of an officer specially appointed for that purpose with state-wide powers.

The next point is that the order classifies as term bonds certain bonds that are really serial bonds, even under the terms of the act. An examination of the form of the various bonds covered by the order leads us to the conclusion that the commissioner rightly classified them according to the definition laid down in the statute. It is quite plain that unless the prosecutor can show that the bonds in question come within the definition of serial bonds, they must necessarily be regarded as term bonds; so that, even if there are bonds which are payable in installments, unless those installments are to run for at least three-quarters of the term of the whole issue, they are not serial bonds in contemplation of the

statute, and while the word "term bonds" in ordinary accep-
tation would be a misnomer, it is a question of classifying
them according to the express language of the act. Applying
this language, we find that the commissioner has correctly so
classified them.

The third point is, to use the language of prosecutors' brief,
that "The commissioner was without power to make the order
under review because the title of the act upon which he must
rely, chapter 212 of the laws of 1917 (the Sinking Fund act),
does not within the constitutional limits disclose any such
object."

When the point is examined it is really more restricted
than above stated, and amounts to this: That chapter 252 of
the laws of 1916 relating to the issuance of bonds by
municipalities, and the School law of 1903, section 76 (*Comp.
Stat., p.* 4746) make certain provisions relating to the issue of
bonds which are either repealed or modified by the Sinking
Fund act of 1917, and that its title "An act concerning sink-
ing funds and sinking fund commissions" is not adequate to
express a legislative intent to change the method of amortiza-
tion of such bonds as laid down in the School act and the
act of 1916. The answer to this given in respondents' brief
seems to us adequate. It is in substance: That so far as
relates to the act of 1916, all bonds issued and issuable under
that act are serial bonds within the statutory definition of
the act of 1917, and to these the provisions of the latter act
relating to sinking funds do not apply; and as respects the
School law, the amendment of 1917 (*Pamph. L., p.* 238)
makes provision for payment of all future bonds by install-
ments, which place them within the statutory serial class,
and that as respects bonds issued prior to that amendment
and not within the serial class, the act simply provides for a
sinking fund where none has been provided for, and that its
object of providing such a sinking fund is clearly expressed
in the title. To this we agree.

The last point is that the act is unconstitutional as impair-
ing the obligation of the city's contract with the bondholders,

because said bondholders presumably or probably bought their bonds as term bonds, and preferably so, expecting that the money to pay them should be raised immediately before their coming due instead of being gradually accumulated in a sinking fund with danger of loss in the meantime. We are unable to see any impairment of the obligation of the contract in this change of scheme. It is certainly a debatable question whether as a practical matter the bondholder is better secured by having the money to pay off his bond accumulated in the sinking fund over a period of years with the possibility, of course, of loss by dishonesty or improper investment; or, on the other hand, wait for the money to be raised at the last moment before the bond falls due with the risk in the interim of the city incurring heavy additional indebtedness which would perhaps cripple it financially and prevent its raising the money to pay off the bonds in the manner originally contemplated. As we view the matter, the requirement that a municipality shall lay by money to pay its debts is much less to be regarded as an impairment of the contract, than, for example, legislative permission given after the bond issue, for the municipality to raise unlimited amounts on additional bonds to the impairment of its ability to meet the earlier ones.

The writ will be dismissed.