### [No. 18112. *En Banc.* August 14, 1923.]

THE STATE OF WASHINGTON, *on the Relation of Tacoma School District No. 10, of Pierce County, Plaintiff,* v. C. W. CLAUSEN, *State Auditor, Respondent.*[1]

SCHOOLS AND SCHOOL DISTRICTS (34)—BONDS—POWER TO ISSUE—CONDITIONS—STATUTES—RETIREMENT BY EQUAL ANNUAL TAX LEVIES. The power of school districts to borrow money and issue bonds, depending upon a strict compliance with the statutory requirements, school bonds to mature "one-twentieth each year," cannot be authorized under Rem. 1923 Sup., § 5583-1, requiring that the bonds shall, as near as practicable, be in such amount as will together with interest, be met by an equal annual tax levy.

SAME (35)—BONDS—DETERMINATION OF DURATION—DISCRETION OF BOARD. Where proposed school bonds were for sites, buildings and multifarious purposes, and there was nothing to indicate the permanency of the buildings or equipment, it is within the discretion of the board to issue bonds to mature within twenty years, under Rem. 1923 Sup., § 5583-5, providing that they shall not run for longer than thirty years; and shall, as near as practicable be issued for a period equivalent to the life of the improvement.

SAME (34)—BONDS—FORM—SERIAL ISSUE—VALIDITY. Under Rem. Comp. Stat., § 4941, providing that school bonds shall be issued in serial form, and Rem. 1923 Sup., § 5583-1, providing that bonds there-

[1]Reported in 217 Pac. 712.

after issued shall be serial in form and maturity, a school district may issue and sell a lesser amount than the total authorized, as it may have need of the money, and thus avoid interest on funds it cannot use.

Same (34)—Bonds—Denomination—Limitation. In view of Rem. Comp. Stat., § 4943, providing that school bonds shall be issued in denominations of not less than one hundred dollars or more than one thousand dollars, bonds in the sum of ten thousand dollars are not authorized by Rem. 1923 Sup., § 5583-1, providing that only bond number one of any issue shall be of a denomination other than a multiple of one hundred.

Application filed in the supreme court, July 11, 1923, for a writ of mandate to the state auditor, to compel the acceptance of school district bonds. Demurrer sustained and application denied.

*J. W. Selden, Frank D. Nash,* and *D. D. Schneider,* for relator.

*The Attorney General, M. H. Wight, Assistant,* and *Chas. O. Flint,* for respondent.

*Teal, Winfree, Johnson & McCullough, amici curiae.*

Tolman, J.—This is an original action in which, by petition, filed in this court, relator seeks a peremptory writ of mandate directing the respondent, as state auditor, to accept and pay for certain bonds according to the terms of the bid of the state therefor.

From the petition, it appears that relator is a municipal corporation of the state of Washington; C. W. Clausen is the duly elected, qualified and acting auditor; and that the duly elected, qualified and acting school board of relator, acting as such, at a meeting duly and regularly held on March 14, 1923, pursuant to notice given, duly and regularly adopted a resolution by which it was determined to borrow money and issue negotiable serial bonds of the school district in the sum of $2,400,000, for the purpose of establishing an intermediate school system which would re-

quire the purchase of school sites, the erection of new buildings, and the replacement of old and temporary buildings, apparatus and equipment.  At the same meeting, it was further determined by resolution, duly and regularly adopted, to submit to the qualified voters of the district, at a general election to be called and held in the district on the 8th day of May, 1923, the question of whether or not such board of directors should be authorized to issue such bonds; that, pursuant to the resolution last referred to, due and regular notices were published and posted as required by law, showing the time, place and purpose of holding the election; that, at the general election held in pursuance of such notices, more than three-fifths of all the votes cast were in favor of the issuance of such bonds, and the election board of Pierce county so certified the results of the election to the county treasurer; that, pursuant to instructions given by the board of directors of relator, and as provided by law, the treasurer of Pierce county duly advertised the sale of $1,200,000, or one-half of the bonds so authorized, and the state board of finance of the state of Washington submitted a bid for the bonds so advertised, which the board of directors of relator has, by resolution, duly accepted and has awarded such bonds to the state of Washington upon its bid therefor, and is now ready and willing to issue such bonds in denominations and multiples of $100, $1,000, or $10,000; that a transcript of the proceedings had and connected with the bond issue was submitted to the state finance committee, which was thereafter rejected by the *Attorney General* of the state of Washington, and the respondent, C. W. Clausen, as state auditor, arbitrarily and unlawfully refuses to accept such bonds and deliver a warrant or warrants in payment therefor to the relator herein, and continues to refuse to accept such bonds and de-

liver such warrant or warrants, and will continue to so do unless relief is obtained through a mandate of this court.

It is further alleged that the assessed valuation of relator is $62,268,431, as shown by the certificate of equalized assessed valuation by the county treasurer of Pierce county, Washington, while the total indebtedness of relator does not exceed the statutory limitation; that five per cent of the total assessed valuation of relator, or the total limit of indebtedness, is $3,113,421.55, and the total indebtedness of the district, including the $2,400,000 bonds herein referred to, is $2,935,596.13, as shown by the financial report of the treasurer of Pierce county; that the bid made by the state board of finance of the state of Washington is the most advantageous bid that the board of directors of relator is able to obtain, and if such sale of the bonds is not made to the state, there will be a great loss to relator; that respondent has assigned as reasons for his refusal to accept such bonds and deliver a warrant or warrants in payment therefor, the following:

(1) That the various annual maturities would not mature each year in amounts so that an equal annual tax levy will be made to include principal and interest as provided for in Section 1, Chapter 151, Laws of 1923, page 488 [Rem. 1923 Sup., § 5583-1].

(2) That the bond issue is for the purpose of acquiring sites and erecting buildings, etc., and is to extend over a period of twenty-one years; that this does not comply with Section 5, of Chapter 151, Laws of 1923, which requires that such bond issue "shall, as near as practicable, be issued for a period which will be equivalent to the life of the improvements to be acquired by the use of the bonds." [Rem. 1923 Sup., § 5583-5].

(3) That such issue would create an indebtedness

against relator in excess of five per cent of the assessed valuation thereof.

It is further alleged in relator's petition that, unless such bonds are accepted and a warrant or warrants issued in payment therefor, relator will suffer irreparable loss and injury; that an emergency exists, and that it has no plain, speedy and adequate remedy at law; and prays for a peremptory writ of mandate to issue from this court directed to respondent requiring him to accept the bonds described in its petition, and to deliver to relator a warrant or warrants drawn upon the state treasurer for the face value of such bonds, according to the terms of the bid of the state of Washington therefor, and for such other and further relief as may seem just and equitable.

Respondent has appeared by general demurrer to the petition, hence the facts, as pleaded, are admitted and we have but to apply the law to those facts.

No defects or irregularities in the proceedings up to and including the determination of the results of the election, except as hereinafter mentioned, are pointed out; so that, without critical examination or analysis, it will be assumed that relator was duly authorized by vote of the electors to borrow money and issue negotiable serial bonds in the amount stated, except as to the matters which we shall discuss.

The objections raised by the *Attorney General* in this court are four in number, and will be treated in the order presented.

The first objection is, in effect, that the authorization for this issue of bonds, provides for retirement of one-twentieth of the whole amount, or $120,000 of the face value each year, beginning with the year 1925, and that the annual maturities upon the one-half of the authorized amount now proposed to be issued and sold

are, therefore, not in such amounts, as near as practicable, as can, together with interest on all outstanding bonds, be met by an equal annual tax levy throughout the life of the bonds, as required by § 1, chap. 151, p. 488, of the Laws of 1923. The statutory provision referred to reads:

"Hereafter all bonds, including refunding bonds, issued under lawful authority by any county, city, town, school district, port district or metropolitan park district, shall be serial in form and maturity and numbered from one upward consecutively. Interest on all such bonds shall be payable either annually or semi-annually, as may be set forth in the act of the officers of the issuing municipal corporation. The various annual maturities shall commence with the second year after the date of issue of such bonds and shall (as nearly as practicable) be in such amounts as will, together with the interest on all outstanding bonds, be met by an equal annual tax levy for the payment of said bonds and interest: *Provided, however,* that only bond number one of any issue shall be of a denomination other than a multiple of one hundred dollars." [Rem. 1923 Sup., § 5383-1].

Following the rule already adopted in this state, it is apparent that relator must comply with this statute, if it be workable. The rule is laid down in *State ex rel. School District No. 301 v. Clausen,* 109 Wash. 37, 186 Pac. 319, in the following language:

"It is elementary law that school districts, under our system of government, possess only such powers as may be conferred upon them by legislative enactment. Whether or not such districts shall possess the power to borrow money and issue negotiable bonds evidencing their debts so created, is wholly a matter of legislative will. It follows, as a matter of course, that such power may, by the legislature, be granted or withheld, and may, by the legislature, be taken away or limited after once being granted."

The salutary and wholesome purpose of the present statute is self-evident.   The legislature has, without doubt, discovered the fallacy of the too prevalent idea that municipalities may borrow indefinitely without thought of the day of payment, leaving future genera-tions to assume the burden of our improvidence, and by this enactment has sought to correct a popular evil, the dire consequences of which the taxpayers are be-ginning to feel, and to bring home to those responsible some sense of their obligation to repay.   Therefore the legislative purpose must be given effect, if that be possible.

Relator contends that to construe the statute liter-ally is to make it unworkable, and that the only practi-cal interpretation is that which it has adopted, i. e., that provision need be made only for the retirement of an equal amount of the bonds each year.   While there are difficulties in the way, as the legislature has recognized by the use of the term "as nearly as prac-ticable," yet we are clearly of the opinion that the school district should have employed the best judg-ment and discretion of its officials in the attempt to meet the terms of the legislative will.

Section 6 of Chapter 53, Laws of 1923, p. 174 [Rem. 1923 Sup., § 5148-2], provides for a ballot title of not more than twenty-five words, so formed as to enable the voters to vote "yes" or "no" upon the question, and, in pursuance of this mandate, the ballot title adopted and used in this instance was:

"Shall the district issue $2,400,000 bonds payable one-twentieth each year beginning the second year, for school sites, buildings and equipment."

The vice of this title was not in its brevity, but in that the voters were required to accept or reject the condition of payment of one-twentieth of the bonds

each year, instead of payment at the times and in the manner provided by the statute, which could have. been referred to with equal brevity.

True, the statute provides, § 4942, Rem Comp. Stat. [P. C. § 5111]:

"The question whether bonds shall be issued, as provided in the preceding section, shall be determined at an election to be held in the manner prescribed by law for holding annual school elections. Notice therefor shall state the amount of bonds proposed to be issued, time they are to run, and purpose for which the money is to be used."

And by section 6, Chapter 53, Laws of 1923, p. 174, the ballot title furnished by the school district is included and reproduced in the general election notices, and thus becomes the notice of the bond question to be submitted. We do not propose to submit a form as sufficient in this or any other case, but it seems apparent that, with all the words in the English language to select from, some form of words within the prescribed limit as to number could be so arranged as to advise the voters substantially as to the time the bonds are to run, or, under the rule of "that is certain which can be made certain," to so refer to the statute as to give the required information. If not, there being no penalty fixed by Chapter 53 for a violation of this provision, and nothing therein making the election void if the prescribed number of words in the ballot title be exceeded, and this being procedural only, it would seem that the statute prescribing the procedure should give way rather than that the substantive law should be disregarded.

We do not overlook the many conditions cited by relator showing the difficulty and perhaps impossibility of making the annual maturities comply strictly and ac-

curately in all cases with the terms of section 1, chapter 151, *supra,* but the saving grace of the words "as nearly as practicable" was extended for the very purpose of permitting the governing body of the municipality affected to exercise its best judgment and discretion in working out a practical plan complying, as nearly as conditions may permit, with the legislative will; and when such governing body has used its judgment and discretion in the matter, it may very well be urged that the courts will not intervene to control such judgment or discretion.    But here, no attempt was made to meet the legislative will as to maturities, and the voters authorized only bonds payable arbitrarily one-twentieth each year, and perhaps would have been unwilling to assume the burden which the statute seeks to cast upon them of paying annually "such amounts as will, together with the interest on the outstanding bonds" make an even and constant burden throughout the whole period until the debt is retired.

What we have already said indicates that the writ must be denied, but for the future guidance of relator, it seems best to discuss briefly the remaining points raised here.

The second question is whether section 5 of the act of 1923, L. '23, p. 490, was complied with.    The section reads:

"Bonds issued under this act shall never be issued to run for a longer period than thirty years from the date of the issue and shall, as near as practicable, be issued for a period which will be equivalent to the life of the improvement to be acquired by the use of the bonds."    [Rem. 1923 Sup., § 5883-4].

The improvements here to be acquired by the use of the bonds are multifarious and of different nature and durability.    Manifestly the sites purchased are permanent in their nature and may even be of in-

creased value when the last bond shall have been paid. The new buildings may be more or less permanent, according to the manner of their construction, which is not disclosed, and may differ one from another in permanency, while apparatus and equipment may, for the most part, quickly wear out and be cast aside. There is nothing to indicate that the board has not used its judgment and discretion in complying with the requirements of this section, and its action will, therefore, not be reviewed.

The third question relates to the proposed sale of a lesser amount than the total of the issue submitted to and authorized by the voters. By section 4941, Rem. Comp. Stat. [P. C. § 5110] (Chap. 90, Laws of 1919), it is provided that all school district bonds shall be issued in serial form, and though the term "serial form" or its equivalent is omitted from the act of 1923, except as used in the section first quoted, section 4941 is not among those sections which are thereby expressly repealed; and in view of the language of the act of 1923, "shall be serial in form and maturity," we cannot hold that the prior statute is necessarily repealed by implication. Since, therefore, the bonds must be issued serially, we see no valid objection to the school district issuing them as it may have need of the money, and thus avoid the payment of interest upon funds which it cannot use. While this may complicate the problem first herein discussed, yet that problem can be considered and met as nearly as practicable as each new series is issued.

The fourth and final question raised and discussed is that raised by relator's offer to deliver the bonds in denominations running as high as ten thousand dollars. Section 4943, Rem. Comp. Stat. [P. C. § 5112], among other things, provides: "Such bonds shall be issued

in denominations of not less than one hundred dollars or more than one thousand dollars." The act of 1923 contains nothing changing this mandate. The last provision of section 1 of the 1923 act provides that "only bond number one of any issue shall be of a denomination other than a multiple of one hundred;" [Rem. 1923 Sup., § 5583-1], indicating that if the total amount of the bonds when divided by one hundred leaves a remainder, that the odd amount not thus divisible, shall be covered by bond numbered one; but this is far from indicating an intention to authorize the issuance of any bond evidencing more than one thousand dollars in amount.

For the reasons indicated, the writ will be denied.

MAIN, C. J., MACKINTOSH, HOLCOMB, BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.