[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Kathleen Durling, an employee of the Hospital of St. Raphael's (HSR), was injured upon entering an elevator on the hospital premises when "she was caused to fall through the floor, twist[ing] her leg due to the elevator's having a caved in floor." She has filed a two count complaint against the defendants, Eastern Elevator Company (Eastern) and Otis Elevator Company, alleging that they were negligent in their examination and repair duties pursuant to a contract between the defendants and HSR. In count one, the plaintiff alleged that the defendant Eastern was negligent (1) in failing to keep and maintain the elevator in the proper working order; (2) in failing to inspect or failing to repair after inspection; (3) in failing to warn of the unsafe condition of the elevator; and (4) in failing to block or barricade the elevator so as to prevent its use. The plaintiff subsequently withdrew the second count of the complaint, which alleged negligence on the part of the defendant Otis. The operative complaint, therefore, is a single count against Eastern.
The defendant has filed a motion for summary judgment and accompanying memorandum of law. A motion for summary judgment must be granted if, but only if, "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49 (formerly § 384). "[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact." Bruttomesso v.Northeastern Conn. Sexual Assault Crisis Services, Inc.,242 Conn. 1, 5-6, 698 A.2d 795 (1997). "A `genuine' issue has been variously described as `triable,' `substantial' or `real' issue CT Page 2218 of fact . . . and has been defined as one which can be maintained by substantial evidence. . . . A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . ." Craftsmen, Inc. v. Young,18 Conn. App. 463, 465, 557 A.2d 1292, cert. denied, 212 Conn. 806,561 A.2d 947 (1989). "[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.)Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111,639 A.2d 507 (1994).
The basis of the defendant's motion is that it was neither the owner of the elevator nor the owner of the elevator-equipment, and that its duties and obligations with respect to the elevator were limited to those duties and obligations set forth in an express agreement between Eastern and HSR, which agreement specifically (1) excluded responsibility for any component of the elevator car, including the car flooring and floor covering; (2) excluded control of the equipment; (3) excluded responsibility for inspection except as to the hydraulic system and/or governor, safeties and buffers; (4) excluded the duty to warn passengers of a danger or to take the elevator out of service; and (5) excluded the duty to barricade the elevator or to prevent its use because of possible danger. In addition to arguing that it had no duty to examine and repair the elevator car flooring and floor covering, the defendant also argues that it had no notice of the dangerous condition of the elevator.
The plaintiff essentially argues in opposition that (1) the contract requires the defendant to examine and repair or replace equipment; (2) the provision which excludes examination of the car flooring and floor covering does not include the elevator platform; (3) a reasonable examination of the platform would have revealed the platform's deterioration; and (4) it was the defendant's responsibility to communicate the needed repair to HSR because the plaintiff lacked the expertise to discover the problem and because, pursuant to the contract, the defendant was the only entity entitled to make repairs or replacements.
"Our resolution of the defendant's claim is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the-parties, which is determined from the language used interpreted in the light of the situation of the parties and the CT Page 2219 circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject' matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact. [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . ." (Citations omitted; Internal quotation marks omitted.) Pesino v. Atlantic Bank of New York, 244 Conn. 85,91-2, 709 A.2d 540 (1998).
The contract between the defendant and the HSR is entitled "Agreement for Eastern Elevator Master Maintenance Service." The contract provides that the defendant "will provide EASTERN MASTER MAINTENANCE SERVICE on the elevator equipment in the above building and described below (herein call [sic] the equipment) on the terms and conditions set forth herein." (Emphasis added.)
The contract then provides under "Extent of Coverage," as follows: "We will: Regularly and systematically examine, adjust lubricate and, whenever required by the wear and tear of the normal elevator usage, repair and replace the equipment (except for the items stated hereafter), using trained personnel directly employed and supervised by us to maintain equipment in proper operating condition.
"Furnish all parts and tools, equipment, lubricants, cleaning compounds and cleaning equipment.
"Relamp all signals as required during regular examinations only.
"Periodically examine and test the hydraulic system and/or governor, safeties and buffers on the equipment. . . ." (Emphasis added.) CT Page 2220
Neither the words "elevator equipment" nor "equipment" are defined in the contract. "In interpreting contract terms . . . the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Sturman v. Socha, 191 Conn. 1, 10,463 A.2d 527 (1983). The word "elevator" is defined as "a cage or platform for conveying people or things from one level to another. . . ." Merriam Webster's Collegiate Dictionary (10th
Ed.). The word "equipment" is defined as "things used in equipping: SUPPLIES, OUTFIT. . . ." Id. Thus defined, the word "'equipment is broad, and may include articles which are attached to the building as an integral part thereof, as well as articles not belonging to that category"; Jewett v. School DistrictNo. 25, 49 Wyo. 277, 54 P.2d 546, 548 (1936); and sufficiently ambiguous to include the floor of the elevator. Accordingly, the "extent of coverage" includes the examination of the floor and flooring of the elevator.
The contract further provides under "ITEMS NOT COVERED": "We assume no responsibility for the following items, which are not included in this agreement: The cleaning, refinishing, repair or replacement of . . . Any component of the car enclosure including removable panels, door panels, sills, car gates, plenum chambers, hung ceilings, light diffusers, light fixtures, tubes and bulbs, handrails, mirrors, car flooring and floor covering." (Emphasis added.) Flooring is defined as "floor, base . . . Material for floors." Merriam Webster's Collegiate Dictionary (10th Ed.).
Thus, while the contract excludes the cleaning, refinishing, repair or replacement of the elevator floor, it does not exclude the examination of that floor, which is within the extent of coverage. Liability for an injury caused by a defective elevator may be based on a duty to inspect. Evans v. Otis Elevator Co.,403 Pa. 13, 163 A.2d 573 (1961); Sheridan v. Aetna Casualty Surety Co., 100 P.2d 1024 (Wash. 1940). Even if it would not be unreasonable to construe the contract as excluding all responsibility for the elevator flooring, such a construction is not clear. Cf. Relly v. Figueiredo, 223 Conn. 31, 36 (1992) (exclusion from coverage in insurance policy, also a preprinted form, must be plain and clear.). In such a case, the applicable rule is that "when two meanings are possible, an agreement is to be construed against the party who drew it." Wall v. Wason,146 Conn. 32, 36, 147 A.2d 200 (1958). That party is Eastern. The CT Page 2221 contract is a preprinted form agreement, drafted by Eastern. Where an agreement is ambiguous, its construction is a question of fact for the trier. Therefore, there is a question of fact as to whether Eastern had a duty to examine the floor of the elevator, a duty that may have impliedly imposed a consequential duty to report a defect in the floor to HSR.
This conclusion is necessarily fatal to Eastern's second claim, that it is entitled to summary judgment because it did not have notice of the alleged defect in the elevator floor. Where a person is under a duty to inspect and where a reasonable inspection would have disclosed the defect or danger, he is "chargeable with notice of it because had [he] exercised a reasonable inspection of the premises, [he] would have [known of] it." Gore v. People's Savings Bank, 235 Conn. 360, 373,665 A.2d 1341 (1995); Sheehan v. Sette, 130 Conn. 295, 297,33 A.2d 327 (1943); Laflin v. Lomas Nettleton Co., 127 Conn. 61, 64,13 A.2d 760 (1940): Reynolds v. Land Mortgage Title Co.,114 Conn. 447, 451-52, 159 A. 282 (1932). The nature of the defect in itself suggests that it may have existed for a significant period of time. See Reynolds v. Land Mortgage Title Co., supra,114 Conn. 450-52. Whether the defect could have been disclosed by a reasonable inspection also is a question of fact. "Ignorance of a condition is not in itself a legal excuse, and if want of actual knowledge was the result of its own negligence, knowledge will be imputed." Id., 452.
For these reasons, the motion for summary judgment is denied.
BY THE COURT
 Bruce L. Levin Judge of the Superior Court