JAMES MELANEFY vs. FRANCIS M. MORRISON & others.

Worcester.    October 2, 1890. — November 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Will — Issues to Jury — Evidence — Attesting Witness.*

On the issue whether a will was induced by the undue influence of the testatrix's pastor, it is a matter of judicial discretion to admit in evidence, as bearing on her mental condition, a book which she had in her library and was wont to read, containing a vivid description of hell, even if there is no evidence that he furnished, used, or referred to it, or that it produced any effect on her mind; also, if it is admitted, to determine whether the jury should be permitted to take it with them to the jury-room when they retire to consider the case.

The opinion of an attesting witness to a will, sought on cross-examination, as to whether the testatrix had sufficient strength of mind to comprehend a clause of the will creating a charitable trust, was *held* to be properly excluded.

At the trial of a probate appeal, where twelve issues relating to the due execution of a will, to the testatrix's sanity, and to undue influence, were submitted to the jury, the presiding judge may in his discretion refuse to submit to the jury the further issue whether the testatrix was prevented by force or fraud from revoking the will, and also other issues relating to collateral matters.

APPEAL, by the next of kin of Mary O'Driscoll, from a decree of the Probate Court allowing her will and three codicils. Trial in this court, before *W. Allen*, J., who allowed a bill of exceptions, in substance as follows.

The testatrix, by her will, after a gift among others of a double house with the land adjoining to her niece, Julia M. Larned, one of the appellants, gave the residue of her estate to the executor, James Melanefy, in trust for the benefit of "an institution for the permanent care of poor and destitute persons," which "the Reverend Thomas Griffin of St. John's Parish in Temple Street, Worcester, has indicated his purpose of establishing," when such institution's "existence and permanent establishment shall be assured." The first codicil revoked the gift to Mrs. Larned; the second codicil gave her a pecuniary legacy; and the third codicil revoked such legacy, and gave her the use of a dwelling-house for life.

The appellants moved that nineteen issues presented by them be submitted to the jury, of which the last four were as follows:

"Sixteenth.   Was said Mary O'Driscoll prevented from revoking said will, and the several codicils thereto, by the force or fraud of said Melanefy or Griffin, or of any other person?

"Seventeenth.   Was a conveyance made from Julia M. Larned of her interest in her father's estate, on or about the fifteenth day of June, 1876, to the testatrix, Mary O'Driscoll?

"Eighteenth.   Was said conveyance made upon the promise of the testatrix to repay the said Julia M. Larned therefor by a testamentary provision?

"Nineteenth.   Was the bequest in the will of said testatrix, in favor of said Larned, made in execution of said promise?"

The judge overruled the motion as to these issues, and the appellants excepted.

Twelve issues relating to the due execution of the will and codicils, to the sanity of the testatrix, and to the exercise of undue influence over her, were submitted to the jury.   On the issue whether the Rev. Thomas Griffin, who was a Roman Catholic clergyman and the testatrix's pastor, exercised undue influence over her, there was evidence tending to show that he asked her to give him a large portion of her estate towards establishing and maintaining the institution referred to in the will, telling her that she had done enough for her friends and relatives, and that the Church alone could stand between her and the flames of hell-fire.   There was also evidence that the testatrix had in her library an illustrated book, which she was wont to read, entitled "Hell open to Christians," which contained a vivid description of the location and tortures of that place; and that, before and after the date of the will, she read the book, examined the pictures, expressing her fears, and talked with her attendants about the contents of the book.   There was no evidence that the clergyman named furnished her the book. The appellants, to show the condition of the testatrix's mind at the time, offered the book in evidence.   The judge permitted the pictures to be shown to the jury, but declined to allow the contents of the book to be otherwise shown or read to them, and also excluded the book and pictures from the jury entirely when they retired to consider the cause; to which the appellants excepted.

The executor put upon the stand, to prove the third codicil

of the will, Henry L. Parker, who drew the codicil, and who testified to the sanity and soundness of mind of the testatrix. The appellants, in cross-examination of Parker, asked him if the testatrix, when she executed the codicil, had sufficient strength of mind to understand and comprehend the residuary clause in the will which she purported to affirm in the codicil. The judge, upon objection by the executor, excluded the question, and the appellants excepted.

The jury answered the issues relating to sanity and undue influence in the negative; and the appellants alleged exceptions.

*W. A. Gile,* for the appellants.

*W. S. B. Hopkins, (H. E. Hill* with him,) for the executor.

KNOWLTON, J. The appellants sought to put in evidence a book which the testatrix had in her library, which it appeared she was accustomed to read. There was nothing to show that the person who was alleged to have exerted undue influence upon her furnished her the book, or used it, or referred to it in any way. There was nothing to show whether she read all of it, and, if not, what parts she read. There was no evidence in regard to the effect, if any, produced on her mind by such portions of it as she read. The offer was to show what thoughts or expressions of others than the persons charged with exerting undue influence had come to the notice of the testatrix, with a view to an inference by the jury that she was peculiarly susceptible to the influence used.

In the absence of anything to show what effect is produced by such expressions, it is largely within the discretion of the presiding judge to determine how far such evidence shall be admitted. In this case, he permitted the counsel to show the jury the pictures contained in the book. There was no offer to read to the jury any particular part of the book, but the offer was to present the whole of it. In some cases it might aid the jury more or less in determining the mental condition of a testator, and whether he would be likely to be easily influenced, to read everything that he had read, and be told everything that had been said to him, within a long period prior to the making of the will. Within reasonable limits, the court might sometimes properly admit evidence of this kind. But, at best, such evidence is very remote, and generally it is of no value whatever.

In the present case, we think it was within the discretion of the presiding judge to decide how far he would permit the contents of the book to be exhibited to the jury, or whether he would admit any part of it. Even if it had been admitted, it was within his discretion to say whether the jury should be permitted to take it with them to their room when they retired to consider the case. *Whithead* v. *Keyes*, 3 Allen, 495.

The witness Parker was not called as an expert. He was one of the subscribing witnesses to the third codicil, and, as such, was allowed to give his opinion in regard to the mental condition of the testatrix when she signed it. *Williams* v. *Spencer*, 150 Mass. 346. His opinion as to the strength of mind required to comprehend a clause creating charitable trusts in a will was not competent. To make his meaning clear in describing the mental condition of the testatrix, he might properly have been permitted to refer to familiar illustrations, of a kind that would not be likely to be misunderstood. The appellants' question which was rejected was asked in cross-examination, and perhaps the judge in his discretion might have allowed it to be answered. But we think his discretion was wisely exercised in excluding it. It involved an opinion on a subject about which jurors and the witness might have differed, and which would not have furnished a safe standard for comparison.

The allowance or disallowance of issues to the jury in a probate appeal rests on the usages and discretion of the court. *Davis* v. *Davis*, 123 Mass. 590. In the present case twelve issues were submitted to the jury, and the appellants appealed from the order refusing to submit the last four included in their motion. The first of them was in these words: " Was said Mary O'Driscoll prevented from revoking said will, and the several codicils thereto, by the force or fraud of said Melanefy or Griffin, or of any other person?" What remedies are open to persons interested, if a testator who has made a valid will is prevented by force or fraud from revoking it, is a question which it is unnecessary in this case to decide. We are clearly of opinion that the exercise of a sound discretion did not require the submission of this issue to the jury in connection with the other issues in the case, and in the form in which it was presented. Whether the matter referred to in it, if established, could be

availed of in any way in this form of proceeding, is a question upon which we express no opinion. But if it could, which we do not intimate, it could be better dealt with on a subsequent application to the court. The other three issues presented by the appellants related to collateral matters, and the ruling in regard to them was correct. *Barker* v. *Comins,* 110 Mass. 477.

*Exceptions overruled and order affirmed.*