ROSE TURTURRO *vs.* THOMAS CALDER & another, trustees.

Worcester.    September 24, 1940. — October 31, 1940.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Negligence*, One owning or controlling real estate, Sidewalk bulkhead, Violation of law. *Municipal Corporations*, By-laws and ordinances. *Fireman. Public Officer. Way*, Public: bulkhead. *Practice, Civil*, Exhibits to jury room.

A landowner who maintained within a public sidewalk a cellar and bulkhead, constructed by his predecessor in title without having secured a license or filed plans as required by an ordinance for construction only, did not violate the ordinance.

A municipal fireman extinguishing a fire in the cellar of premises acted as a public officer, and not as an agent of the landowner, in ordering bulkhead doors in the sidewalk opened for ventilation; and the landowner was not liable for injury to a traveller on the sidewalk caused by negligence of one opening the doors in obedience to such order.

A refusal by a trial judge to permit the jury to take with them to the jury room a copy of an ordinance in evidence showed no error.

TORT. Writ in the Superior Court dated July 5, 1935.

The action was tried before *Kirk*, J.

*J. H. Meagher, Jr.*, for the plaintiff.

*C. C. Milton*, (*R. C. Milton* with him), for the defendants.

RONAN, J. The plaintiff, a traveller upon Shrewsbury Street, a public way in Worcester, was injured on the morning of December 8, 1934, by being thrown down when the doors of a bulkhead were raised while she was crossing over them. The bulkhead was located partly upon the defendants' property and partly upon the adjoining sidewalk, where it extended into the way for three and one half feet beyond the inside line of the sidewalk. The jury found for the defendants and the case is here upon the plaintiff's exceptions to various rulings upon evidence, denial of requests for instructions, and portions of the charge.

There was evidence that shortly before the accident an oil burner overflowed in the defendants' cellar causing a fire and considerable heavy smoke; that a hose company of the Worcester fire department and the insurance fire

patrol were engaged in extinguishing the fire when a fireman or a member of the insurance fire patrol gave an order to open the bulkhead doors for ventilation; that the doors were then pushed up by one Ruggiere, who was not an agent or servant of the defendants, and by one of the insurance fire patrol and that the plaintiff, who had stepped upon the doors, was thrown down. There was also evidence that one of the defendants had heard the order given to open the doors and that immediately after the doors were opened a fireman and one of the defendants were seen to come out of the bulkhead.

The defendants became owners of the premises on the death of their father, in 1927, and since that time have conducted business upon the property and occupied the cellar for storage. The building was erected in 1914. There was no evidence that there was any change in the location or the condition of the bulkhead since that time. The defendants did not apply for a license for the bulkhead or file any plans of the bulkhead with the building commissioner.

The principal contention of the plaintiff is that there was error in excluding section 2, chapter 36 of the ordinances of the city of Worcester, and in refusing to permit a clerk in the public buildings department of the city to answer a question as to whether a plan of the bulkhead had been filed in compliance with this ordinance.[1] She contends that if this evidence had been admitted she would then have

---

[1] "No person and no department of the City shall break or dig up the ground or pavement in any highway or street or erect thereon any staging for building, or place thereon any material or any goods, wares or merchandise, or any coal, dirt, glass, rubbish, sharp or pointed substance of metal, porcelain or earthenware, or any obstruction of any kind, or occupy any portion of a highway or street for the purpose of erecting, repairing or moving any building *without a written license from the street commissioner;* except, however, that in case of an emergency, the head of a department may proceed to act without such license, but shall, as soon as may be, notify the street commissioner. Such license shall contain such lawful restrictions and limitations as the Street Commissioner may deem necessary for the protection, convenience and safety of the public.

"No such license to remove the ground or pavement in any highway or street, for the purpose of constructing a cellar, vault, coal hole, or other underground area within street lines, shall be issued until plans in triplicate of said proposed construction, in detail, have been filed with and approved by the superintendent of public buildings, but in no case shall the superintendent of public buildings approve plans for underground construction extending under the streets from the abutting estate for a distance greater than one-half the width of the sidewalk."

been able to show that the bulkhead was maintained in violation of the ordinance and that the violation was evidence of the negligence of the defendants.

The first paragraph of the ordinance regulates the use of the surface of the way and forbids the digging up of a street or the placing thereon of any materials, goods or obstruction of any kind, without a license from the street commissioner. There was testimony that no change had been made in the sidewalk abutting the defendants' premises since 1913. There was nothing to show that the defendants had placed anything upon the sidewalk or that they had installed the bulkhead. The second paragraph deals entirely with the construction of underground areas within the limits of the street. Here again there is an entire lack of evidence that the defendants had constructed the underground area or the bulkhead. If we assume that the witness would answer that no plans for the bulkhead were filed when the permit for the erection of the building was issued in May, 1914, yet that obligation was placed upon the one constructing the bulkhead, and not upon some subsequent owner of the premises. Both paragraphs of the ordinance are anticipatory in that they require a license before any one places an obstruction on the sidewalk or constructs an underground area under the sidewalk. The ordinance does not in terms or by implication forbid the maintenance of an underground area by an owner of the premises which had been constructed years before by a previous owner who had neglected to obtain a license for its construction. There is a plain distinction between the erection and the maintenance of a structure. *Watertown* v. *Sawyer*, 109 Mass. 320. *Somerville* v. *Walker*, 168 Mass. 388. *Commonwealth* v. *Hayden*, 211 Mass. 296. The ordinance is unusual in that it does not regulate both the construction and the maintenance of certain objects located in the limits of a street, as is frequently the case. See *Pedrick* v. *Bailey*, 12 Gray, 161, 162; *Dalton* v. *Great Atlantic & Pacific Tea Co.* 241 Mass. 400, 402. It may be that the failure to provide for the maintenance of underground areas was due to inadvertence, but we cannot supply the omis-

sion. *Arruda* v. *Director General of Railroads*, 251 Mass. 255. *Morse* v. *Boston*, 253 Mass. 247. The issue is not whether the city would have the right to compel the removal of the bulkhead from the public way, *Commonwealth* v. *King*, 13 Met. 115; *Union Institution for Savings* v. *Boston*, 224 Mass. 286, but whether the ordinance required the defendants to secure any license for the bulkhead. It is clear that it did not. Consequently, the defendants could not be found to have violated its terms and the judge was right in excluding the ordinance and the question to the clerk of the building department. *Gerry* v. *Worcester Consolidated Street Railway*, 248 Mass. 559, 565. *Rogers* v. *Murch*, 253 Mass. 467, 471.

The judge instructed the jury that if they found that one of the defendants on his own initiative opened the bulkhead doors, then he was bound to exercise due care for the safety of pedestrians in opening the doors; that it was for them to determine the negligence of the defendants if they found that one of the defendants had a reasonable opportunity after he heard the order to open the doors to warn travellers and failed to do so; and that if the jury found that the doors were opened in obedience to an order of a member of the fire department then the defendants would not be liable for the negligence of the persons who opened the doors. The instructions were sufficiently favorable to the plaintiff. The defendants had been temporarily divested of control of their premises during the existence thereon of an exigency which threatened the public safety, and the firemen who had lawfully entered and taken possession in order to extinguish the fire had not completed the performance of their duties when the accident occurred. They were not acting as agents or servants of the owners but as public officers for whose conduct the defendants cannot be held responsible. *Metallic Compression Casting Co.* v. *Fitchburg Railroad*, 109 Mass. 277. *Hyde Park* v. *Gay*, 120 Mass. 589. *Gregoire* v. *Lowell*, 253 Mass. 119. *Brosnan* v. *Koufman*, 294 Mass. 495, 501. *Aldworth* v. *F. W. Woolworth Co.* 295 Mass. 344, 346. *Puleo* v. *Bailey*, 186 App. Div. (N. Y.) 771.

It is unnecessary in view of what has been said to discuss further the various requests for rulings. The judge was right in refusing to grant any of them in so far as they were not given in his instructions to the jury. Neither was there error in refusing to permit a copy of another ordinance, which had been admitted in evidence, to be taken by the jury when they retired to consider the case. *Melanefy* v. *Morrison*, 152 Mass. 473. *Krauss* v. *Cope*, 180 Mass. 22. *Portland Gas Light Co.* v. *Ruud*, 242 Mass. 272.

*Exceptions overruled.*