BELL COUNTY v. JEWEL P. LIGHTFOOT, ATTORNEY-GENERAL.

No. 2284.   Decided June 20, 1911.

**1.—County—Bonds—Repair of Bridges.**

The authority granted to a county to issue bonds for the construction of
bridges (Rev. Stats., art. 877, amended by Act of April 28, 1903, Laws, 28th Leg.,
1st Called Session, p. 9) embraces also the purpose of repairing and maintaining
them after construction.   (Pp. 348, 349.)

**2.—Same—Bond Issue—Amount—Submission to Vote.**

The power of the Commissioners Court to issue county bonds for the repair
of buildings and structures (bridges) may be exercised where the amount is less
than $2000, without submitting the question of their issuance to a vote of the
tax-payers (Rev. Stats., art. 918k, Act of May 26, 1899, Laws, 26th Leg., p.
258).   Nor is the aggregate of different issues for that purpose limited to such
amount.   If the particular issue of bonds for bridge repairs authorized by the

court is less than $2000 and the aggregate within the limit imposed for all bonds by the Constitution and taxable values of the county, the issue is authorized without submission to vote.   (Pp. 349, 350.)

Original application by Bell County to the Supreme Court for writ of mandamus to require the Attorney-General to approve an issue of bonds.

   *A. L. Curtis,* for relator.

*J. P. Lightfoot,* Attorney-General, and *C. B. Robertson* and *Seb. F. Caldwell,* Assistants, for respondent.—Municipalities can not issue bonds unless the power to do so is conferred by legislative authority either express or clearly implied.   28 Cyc., 1575; Ball Hutchins & Co. v. Presidio County, 88 Texas, 64; Nolan County v. State, 83 Texas, 193; Waxahachie v. Brown, 67 Texas, 519.

The language excepting certain bonds from submission to vote is to be strictly construed.   36 Cyc., 1162; Read v. Henderson, 23 Texas Civ. App., 617; Collins v. Warren, 63 Texas, 315; Roberts v. Yarbrough, 41 Texas, 449; Tyson v. Britton, 6 Texas, 22; State v. Brady, 102 Texas, 408; Paxton v. Farmers Irrig. Co., 29 L. R. A., 853

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

Relator seeks a writ of mandamus to the Attorney-General requiring him to approve an issue of bonds by the county for the sum of $1,990. The order of the Commissioners' Court of Bell County is in proper form, was regularly adopted by said court and contains this recital:

"Be it ordered by the Commissioners' Court of Bell County that the bond of said county to be called 'Bell County Bridge Repair Bond' be issued under and by virtue of articles 877 et seq, Revised Statutes 1895, article 877, being amended by First Called Session of the Twenty-Eighth Legislature 1903, and also section 4 of chapter 149, Acts of the Twenty-Sixth Legislature, Laws 1899, for the purpose of repairing the following bridges:"

The order provided in a proper manner for the payment of interest and for the expenditure of the fund.   The proposition was not submitted to the voters of the county.

The county issued the bonds and presented them to the Attorney-General for his approval, who refused to approve them, assigning the following reasons:

"First.   That no express authority is conferred upon a county to issue bonds for bridge repair purposes and that therefore the county has no power under law to issue such bonds.

"Second.   That if such authority is conferred and if such power does exist, that Bell County has exhausted the same by heretofore, in preceding bond issues, issuing bond for such purpose in excess of $2,000.   A copy of respondent's letter declining to approve said bonds is hereto attached, marked Exhibit A and made a part of this petition."

The respondent filed a general demurrer, which raises the issue of law that the bonds were not issued in accordance with the law.

Article 877 reads: "The County Commissioners' Court of any county

in this State is hereby authorized and empowered to issue the bonds of said county for the following purposes:

"First.   For the erection of a county courthouse and jail or either.

"Second.   For purchasing or constructing bridges for public purposes within the county or across a stream that constitutes a boundary line of the county, or for the purpose of improving and maintaining the public roads in the county; provided, that this Act shall. not be construed as authorizing the Commissioners' Court to issue bonds for any of the said purposes without submitting the same to a vote of the people of said county as provided in chapter 149, Acts of the Twenty-Sixth Legislature, laws of 1899; provided further that when the Commissioners' Court deem it advisable to issue bonds for both the purchase and construction of bridges and the improvement and maintenance of the public roads, both questions may be submitted and voted on as one proposition." (Laws 1903, Twenty-Eighth Legislature, First Called Session, page 9.)

The method of issuing the bonds is prescribed by the following provisions of the statute:

"Art. 918h.   Hereafter it shall be unlawful for the Commissioners' Court of any county, or the city council of any incorporated town or city in this State, to issue the bonds of said county, or town or city, for any purpose authorized by law, unless a proposition for the issuance of such bonds shall have been first submitted to a vote of the qualified voters, who are property taxpayers of said county, town or city, and unless a majority of the said qualified property taxpayers voting at said election is in favor of the proposition for the issuance of bonds, then the said bonds shall not be issued.

"If the proposition for the issuance of bonds be sustained by a majority of the said property taxpayers voting at said election, then the said bonds shall be authorized and shall be issued by the said Commissioners' Court, or said town or city council; provided, that this Act shall not be construed to authorize and render valid bonds without being first submitted to the Attorney-General, and certified to by him as now required by law."

"Art. 918k.   This Act shall not apply to funding bonds issued or to be issued of any valid outstanding bonds of said county, town or city; provided, that this Act shall not apply to any bond issue when for a sum less than $2,000, when issued for the purpose of repairing buildings or structures for the building of which bonds are allowed to be issued."

The Attorney-General objects that the statute under which the right to issue the bonds is claimed does not empower the county to issue bonds for the purpose of repairing bridges.   We think it well settled that the authority to construct bridges for public purposes embraces the repair and maintenance of such structures.   (In the Matter of W. A. Fowler, 53 N. Y., 60.)

From the opinion in the case just above cited we copy the following:

"Nor do we think that the phrases 'to construct' and 'be constructed' are, in the purview of this Act, to be confined to the bare act of building the sewer.   Doubtless, to construct is, primarily, to form, to build together; and a power to construct may, in many cases, end when the

work of building is done. But here the power to construct is the power to keep together as well as the power to put together, the power to maintain, protect and preserve, as well as the power to erect. The purpose or object of sewerage, upon a general plan for a city, is not temporary, and such a plan is for a long continued use and benefit. The works constructed for it must be afterward maintained, else the purpose fails. And for this, it is as needful that the municipality have the lawful use of the streets where the sewers are laid, as it is for the purpose of laying them, so that the authority given to the board to apply for the opening of this street was not gone upon the completion of the sewer."

Comment upon the authority cited would be superfluous.

It is further objected that, without submitting the question to the voters, Bell County had previously issued bonds at different times, each issue being for sums less than $2,000, but, in the aggregate, exceeding that amount, therefore, the power had been exhausted. In other words, the objection, in effect, is that the statute authorizes but one issue for sums less than $2,000, or a more liberal construction of the objection would be that the total of the issues under $2,000 should not exceed that sum.

Article 918h copied above provides that thereafter it shall not be lawful for the Commissioners' Court of any county to issue bonds of the said county for any purpose authorized by law unless the proposition shall have first been submitted to a vote of the qualified voters and unless a majority of such voters shall approve of such issue. But in article 918k, which is a part of the same Act of the Legislature, it is also provided "that this Act shall not apply to any bond issue when for a sum less than $2,000 when issued for the purpose of repairing buildings or structures for the building of which bonds are allowed to be issued." Thus the law limits the issuing of bonds without submission to bonds providing for "repairing of structures for the building of which bonds are allowed to be issued."

The contention of the respondent being, in effect, that the bonds issued without submission to the vote of the people must not exceed, as a whole, the sum of $2,000, the meaning of the words, "bond issue," must be ascertained to determine this question. The language is thus defined by the authorities: "A class or series of bonds, debentures, etc., comprising all that are emitted at one and the same time." (Webster's Unabridged Dictionary, word Issue, subd. 13; Black's Law Dict., word Issue "in business law;" 23 Cyc., 367, subd. c.)

It will be observed that under the definitions above quoted the phrase "bond issue," used in the statute, means all of the bonds issued at one time, and, "any bond issue," means any one of the issues of bonds thus defined, the limitation being placed upon the amount of each issue and not upon the number of issues of bonds to be made; nor upon the total of such issues.

We think it clear from the authorities and from the language of the Act that the intention was to allow the Commissioners' Court of each county to issue bonds to the amount of $2,000 for the purpose named, and that they might repeat the issue for such amount as often as necessary without submitting the same to a vote of the people, the limitation

upon such repetition being that those issues with all other classes of bonds could not exceed that limitation prescribed for all bonds, they must be within the terms which limits the indebtedness thus incurred to a sum upon which the interest, etc., can be paid by certain amount of taxes.

There is no suggestion of bad faith on the part of the County Court and such condition is not considered by us. It is ordered that the writ of mandamus issue.

*Mandamus awarded.*