# CHARLESTON.

REZIN R. MOZINGO, *Administrator, Etc.*

*v.*

WELLSBURG ELECTRIC LIGHT, HEAT & POWER CO. *et als.*

(No. 5426)

Submitted February 16, 1926.   Decided February 23, 1926.

ELECTRICITY—*One Contracting to "Repair" Electric Railway Company's High-Tension Wires Held Not Liable to Company's Employees Coming Into Contact With Wires, on Theory of Duty to Change Location or Cover Wires.*

One under contract with an electric railway company simply to repair the company's high-tension electric wires along its railway lines, is under no duty thereby to make changes in the location of such wires or to cover them with insulation or boxes for the protection of the company's employees on the premises engaged in work incident to their employment, and cannot be made to respond in damages to such employees injured by coming in contact with the wires.

(Electricity, 20 C. J. § 49 [Anno].)

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Brooke County.

Action by Rezin R. Mozingo, administrator of the estate of Ralph Mozingo, deceased, against the Wellsburg Electric Light, Heat & Power Company and others. Judgment for the plaintiff, and defendant the Brooke Electric Company brings error.

*Judgment reversed; new trial awarded.*

*Erskine, Palmer & Curl,* for plaintiff in error.
*Ramsay & Wilkin,* for defendant in error.

MILLER, JUDGE:

By this writ of error the defendant The Brooke Electric Company seeks to reverse a judgment of the circuit court

against it in favor of the administrator of the estate of Ralph Mozingo, deceased, in an action for damage for injuries which resulted in the death of the intestate.

At the time he was injured Mozingo was an employee of the Wheeling Traction Company and was engaged in painting a bridge owned and used by his employer. His injuries were the result of his coming in contact with a high tension electric wire carrying a current of 22,000 volts, one of three strung lengthwise above the top of the bridge. The declaration alleges that the defendants, the Wellsburg Electric Light, Heat & Power Company, The Brooke Electric Company, the West Penn Power Company, and the Hancock County Electrict Company, were the owners and operators of the wires in question. The first count charges that it was the duty of the defendants to insulate said wires so that persons rightfully on the bridge in the performance of their duties would not be injured thereby; the second, that it was the duty of the defendants to have placed and maintained said wires at such a height above the top of the bridge that such persons might not be injured by coming in contact with them; and the third, that it was defendants' duty to box or otherwise cover said wires to protect such persons. A breach of each of these alleged duties is charged.

At the close of the introduction of the evidence, plaintiff dismissed his action as to each of the defendants except The Brooke Electric Company. The appellant then moved the court to exclude the evidence and direct a verdict for it, on the ground that the plaintiff had not made a case against it. The action of the court in overruling appellant's motion is assigned as error.

The only evidence bearing on the question of appellant's liability was the testimony of J. S. Johnson, the general superintendent of The Brooke Electric Company. He testified that the appellant "had charge of the repairs" of the high tension lines and trolley wires of the Wheeling Traction Company at the time Mozingo was injured; that the electric current causing the injuries was produced by the Wheeling Traction Company and the Beech Bottom Power Company, at a point or points south of the bridge where the accident

occurred, and was carried over the wires owned by the traction company to points north of the bridge, where a part of the current, after being reduced to a lower voltage, was distributed and sold to consumers by the appellant; and that the greater part of the current conveyed by these wires was used by the traction company.

The wires were not covered by insulation, and were not boxed; and the several witnesses who testified on the subject said they were from four to five and a half feet above the top of the bridge. The witness Johnson testified that the wires were in "good order", and that they were in the same condition they were when he took charge of the repairs in 1915, ten years before, and had not been changed in that time.

There is no evidence that The Brooke Electric Company had any interest in the current on the wires above the bridge; only that it purchased current after the same had been reduced to a low voltage by converters not under its control. No contract between the traction company and the appellant is in evidence; and there is no evidence of a contract except the testimony of Johnson that appellant "had charge of the repairs." It does not appear whether it was the duty of appellant to inspect the wires and to keep them in repair on its own initiative, or whether it only made such repairs as were considered necessary and expedient by the traction company when directed to do so.

If the appellant was under a duty to keep the lines in repair, what is meant by "repair"? The numerous texts and the courts whose decisions we have examined have adopted the commonly accepted meaning of the verb "repair" as defined by the lexicographers. Webster says: "To restore to a sound or good state after decay, injury, dilapidation, or partial destruction." The Standard and Century dictionaries define the term in the same language, except that the words "mend" and "renovate" are added as synonyms. See 34 Cyc. 1327; 24 Am. & Eng. Enc. Law, pp. 470-472; 7 Words & Phrases, pp. 6096-6100; 4 Id. (New Ser.) pp. 272-276; and the cases cited and quoted from therein; *Farraher* v. *Keokuk,* 111 Iowa, 310. "Repair means to restore to its former con-

dition, not to alter either the form or the material.'' *Oil Company* v. *Richardson,* 63 Pa. St. 162. And it is generally held that repair does not mean to alter or change condition, or replace with new or different material. *Vincent* v. *Frelich,* 50 La. Ann. 378, 69 A. S. R. 436; *Thompson* v. *Pendell,* 12 Leigh, 591; *In re Matter of Paving Fulton Street,* 29 How. Prac. 429; *Stephens' Ex'ors* v. *Milnor,* 24 N. J. Eq. 358. And in *Danville* v. *Danville Ry. & Elect. Co.,* 114 Va. 388, 43 L. R. A. (N. S.) 463, and *Columbus St. Ry. & Light Co.* v. *Columbus,* 43 Ind. App. 265, 86 N. E. 83, it is said that ''good repair'' does not necessarily mean ''good condition''; that a road or street may be in good repair and yet be in poor condition to bear the increased traffic passing over it.

Johnson says the wires were in the same condition they were when he took charge of the repairs; and there is no evidence tending to show a duty on the part of appellant to do more than to keep the wires in the same condition it found them when it entered into the contract or arrangement with the traction company. To put the wires in the condition or position which plaintiff alleges was necessary to make them safe, would have required the use and addition of entirely new materials, or the lengthening of the supporting poles, not, as far as the record shows, ever contemplated by the parties. Such work would constitute reconstruction, not repair.

In view of the law as we find it, and the record of the case presented here, no duty appears on the part of the appellant to put the electric wires of the traction company in a condition necessary to protect either the employees of the company or other persons coming on the premises.

The judgment will be reversed, the verdict of the jury set aside, and the appellant awarded a new trial.

*Judgment reversed; new trial awarded.*