No. 34,567

School District No. 6 in Chase County, *Plaintiff*, v. George Robb, as State Auditor, etc., *Defendant*.

(93 P. 2d 905)

Opinion filed September 19, 1939.

*James G. Martin, Innis D. Harris, A. Bryce Huguenin* and *Justus H. Fugate,* all of Wichita, for the plaintiff.

*Jay S. Parker,* attorney general, *Morton B. Cole,* assistant attorney general, and *Joseph Scott Payne,* special assistant attorney general, for the defendant.

The opinion of the court was delivered by

Thiele, J.: Plaintiff seeks by mandamus to compel the state auditor to register certain school-district bonds. The sole question before us is whether the school district was authorized to issue bonds to accomplish the purposes hereafter mentioned, and arises out of the following:

The plaintiff school district embraces the city of Cottonwood Falls and some surrounding territory. The present school building is about thirty-five years old, and with the passing of years the heating plant and electrical equipment are said to have become inadequate, unsafe and not conducive to the health of the pupils and teachers, and the roof on the building has deteriorated to the extent that a

new roof is necessary, it being impossible to satisfactorily repair the same. Assuming that the necessary funds for the purpose could be raised by a bond issue, the following proposition was submitted to the electors of the school district:

"Shall Chase County, Kansas, School District No. 6 issue bonds in the sum of sixteen thousand dollars ($16,000) as provided by law, for the purpose of equipping the present schoolhouse with necessary heating and electrical equipment and erecting and constructing a new roof thereon in and for said district; all of said bonds to be payable within twenty years and to bear interest at a rate not to exceed three percent (3%) per annum?"

The result of the election was for the issuance of the bonds, and thereafter, under proper proceedings, they were issued and subsequently presented to the state auditor for registration. He refused registration on the grounds there was no power or authority for the school district to issue bonds for the purpose or purposes stated in the proposition submitted. This action followed.

In determining whether or not the school district has the power to issue bonds for a particular purpose, we follow the test laid down in *Kaw Valley Drainage Dist. v. Kansas City*, 119 Kan. 368, 239 Pac. 760, where it was held:

"Municipalities cannot issue bonds or other like securities unless the power to do so is conferred by legislative authority, either express or clearly implied. Any reasonable doubt as to the existence of such power should be resolved against its existence."

And see, also, *Woodson v. School District*, 127 Kan. 651, 655, 274 Pac. 728, and cases cited.

Plaintiff contends that under G. S. 1935, 72-2001, authorizing a school district to issue bonds "for the purpose of erecting and equipping, or purchasing and equipping, one or more schoolhouses in and for any school district," etc., it may issue the present bonds; that the replacement of the present roof is erecting, and that the replacement of the present heating and electrical apparatus is equipping, a schoolhouse. It also contends that the fact a new building is not being erected and as thus erected is being equipped is not the test, as the greater project includes the lesser, and that bonds may be issued to erect a new roof on the present building and to install new heating and electrical equipment to replace that now there but inadequate for present purposes. The defendant contends, in effect, that the district is seeking by the use of funds from the sale of bonds merely to repair the school building, and that what is

purposed to be done should have been done or should be done with the use of current tax receipts.

It may be observed that under the statute authorizing the issuance of bonds either for the erection or purchase, and equipping, of the school building, the unit referred to is the building, and not its component parts. In terms the statute does not authorize the issuance of bonds to repair or replace any part of any existing school building. Essentially the question may be said to be whether the school district is erecting and equipping a school building or merely repairing a school building now in existence. In that connection, it must not be overlooked that were the proposed work now completed, the school district would have a building in no sense different from the present building, save that it would have a new roof and assumedly a more adequate heating and electrical system; it would have no more room, and structurally it would not be changed.

In *Parker-Washington Co. v. Meriwether*, 172 Mo. App. 344, 158 S. W. 74, the question was whether certain street improvements were reconstruction or repavement or repair, and in discussing that it was said:

"In one sense, the term 'reconstruction' and the term 'repair' are so dissimilar as to render it difficult to make both terms applicable to the same work at the same time. In other words, ordinarily it is not easy to conceive of a thing being reconstructed and repaired at one and the same time. To 'reconstruct' is to construct again, to rebuild, to form again or anew, while to 'repair' is to restore to a sound state after decay, injury, dilapidation, or partial destruction; to mend. The only sense in which the two terms can be used together concerning a work is that, in those places where decay or dilapidation is so complete as to require a total reconstruction or forming anew, the work can be said to be 'reconstructed,' while at other points where the decay is only partial, the work is merely mended or repaired. . . . When, however, the proceedings authorizing work to be done employ the words 'reconstruct and repair' it should be held to be authorized under those sections which use those terms, and not under another and totally different section which contemplates either the creation or construction of the work as an original matter, or the total substitution of a new work in place of the old." (pp. 348, 349.)

In *Cotter v. Joint School Dist.*, 164 Wis. 13, 158 N. W. 80, the question was whether, under a statute authorizing the erection or purchase of a school building, certain funds might be used to remodel a school building. It was there said:

"It is urged that since the statute permits a loan only for the purpose of aiding in the erection or purchase of a schoolhouse, money cannot be borrowed

for the purpose of remodeling a schoolhouse and building an addition thereto; that the remodeling of a building is not equivalent to an erection thereof. We think such a construction is too narrow. The statute was intended to enable school districts that did not have adequate schoolhouses to obtain them by purchase or erection, and it should receive a liberal construction to effectuate that purpose. The remodeling of a building is more than repairing it or making minor changes therein. The ordinary significance of the term imports a change in the remodeled building practically equivalent to a new one. When it is supplemented by the building of an addition thereto the whole operation may properly be held to come within the purview of the statute. The inclusion of an old structure into a practically new one does not take the process out of the meaning of the term 'erection,' used in a broad sense." (p. 15.)

In *Bradbury v. City of Idaho Falls*, 32 Ida. 28, 177 Pac. 388, it appears the statute authorized issuance of bonds to acquire a light plant. The question was the right of the city to issue bonds to enlarge, extend, etc., an existing plant. In denying that right the court said:

"The manifest purpose of permitting municipalities to issue bonds and to apply the proceeds of the sale of them to acquiring light and power plants is that they and their inhabitants may procure adequate light and power at reasonable rates and under management responsive to the will of their citizens. It does not follow, nor. may it be fairly implied in, or as incident to, the power to acquire such a plant and to issue and sell bonds to raise funds with which to pay the cost of acquiring it, that bonds may be issued and sold in order to raise funds with which to enlarge, extend, repair, alter and improve one already owned by a city, nor is power to do so essential to the accomplishment of the objects and purposes of such a municipal corporation.

"It appears to have been the legislative intent that, while a light and power plant may be acquired by means of a bond issue, it must be enlarged, extended, repaired, altered or improved, if found necessary or desirable to do so, with funds derived from its operation, or at least, from some other source than the sale of bonds. Some of these items clearly are, and others may be, within the scope of maintenance, and there is nothing in the law to suggest a legislative intent that a municipality may raise money with which to maintain its light and power plant by the means here sought to be employed." (p. 33.)

It appears that courts of other jurisdictions have seen fit to draw a distinction between the erection of public improvements and the maintenance or repair of them, insofar as use of moneys from bond issues is concerned.

We cannot agree with plaintiff's argument that the greater includes the lesser. As has been indicated, our statute authorizing issuance of bonds for erecting and equipping schoolhouses has the schoolhouse for the unit. Were we to agree with the plaintiff, to

be consistent we would have to approve any bond issue the purpose of which was to replace any worn-out or obsolete part of a school building, whether it was a new roof, a portion of a roof, a new floor, or a part of one, or some other part or portion of the building. The record here makes it clear that what it is proposed to do here is to put the school building in good condition by replacing or renewing parts of it; in other words, by repairing or replacing worn-out or inadequate parts. We think that had it been intended by the legislature that a school district be authorized to issue bonds for such purposes, it would have used language clearly indicating that purpose. And we are persuaded to this conclusion by the fact that on other occasions it has done so. Among other instances, it has provided for the issuance of bonds by the following statutes:

Laws 1939, chs. 254 and 275; G. S. 1937 Supp. 72-1704, 72-1749 and 72-1752, for repair of school buildings; G. S. 1935, 12-631a, for repair of sewers; G. S. 1935, 12-805b, for repair of municipal public utilities; G. S. 1937 Supp. 13-1238, for repair of public levees; G. S. 1935, 13-1330, for repair of pavements in parks; G. S. 1935, 13-2531, for repair of certain pavements; G. S. 1935, 14-526 to 14-530, for repair of bridges; G. S. 1935, 24-489, for repair of dikes; G. S. 1935, 68-1106, for repair of bridges; G. S. 1935, 68-1411, for repair of bridges; G. S. 1937 Supp. 80-1602, for repair of township water systems.

We conclude that under the statutes authorizing school districts to issue bonds for the purpose of erecting and equipping or purchasing and equipping a schoolhouse in the district, the district has no power to issue bonds the proceeds of which are to be used for repairing a presently existing building, and that the work contemplated in the present proceedings is repair work.

The action of the state auditor in refusing to register the bonds was proper, and the writ of mandamus is denied.