Gail Schoettler State Treasurer State of Colorado 140 State Capitol Denver, CO 80203
Dear Ms. Schoettler:
This opinion letter is written in response to your inquiry about the manner in which moneys in the Public Buildings Trust Fund (hereinafter "the Fund") may be used and obtained for such use. According to the information you have provided me, there is approximately $480,000 currently in the Fund; and, the Fund has not been utilized since 1935.
QUESTIONS PRESENTED AND CONCLUSIONS
1. For what purposes may moneys in the Fund may be used?
 To erect, or to keep erected, public buildings used by the legislature or judiciary.
2. How are moneys obtained from the fund?
Through the usual legislative appropriation process.
ANALYSIS
1. On March 3, 1875, the United States Congress authorized the territory of Colorado to form a state. Colorado Enabling Act (hereafter, "the Act"), Ch. 139, 18 Stat. 475 (1875).Within the Act were certain conditional grants of unappropriated public lands to the State of Colorado to be used for various purposes, including land for a penitentiary, for the use and support of a state university, and for erecting certain types of public buildings. Sections 7-10 of the Act, Ch. 139, 18 Stat. at 475 (1875). It is this last category of public land grant with which we are concerned here.
In section 8 of the Act, Congress granted public land to the state "for the purpose of erecting public buildings at the capital of said state, for legislative and judicial purposes, and in such manner as the legislature shall prescribe." Ch. 139, 18 Stat. at 475 (1875). In its constitution, the State of Colorado accepted that land and allocated the responsibility for managing it to the the State Board of Land Commissioners (hereafter "the Board") under such reasonable regulations as may be enacted by the General Assembly. Colo. Const. art. IX, §§ 9-10 (1876 
1910). The Board is to hold the public lands in trust, securing the maximum proceeds from such lands, with such proceeds to benefit the purposes specified in the Act. Colo. Const. art. IX, § 9 (1876). The proceeds from the sale or lease of these lands make up the moneys in the Fund.
Courts have uniformly held that expenditures of federally created trust funds must be confined to the purposes for which the trust was created. E.g., Ervien v. United States,251 U.S. 41, 47 (1919) (New Mexico Enabling Act trust for various purposes); United States v. State of New Mexico,536 F.2d 1324 (10th Cir. 1976) (New Mexico Enabling Act trust for miners' hospital); In Re Internal Improvement Fund,24 Colo. 247, 48 P. 807 (1897) (section 12 of Colorado's Enabling Act); In Re Canal Certificates, 19 Colo. 63, 34 P. 274
(1893) (sections 7-12 of Colorado's Enabling Act); InRe Internal Improvements, 18 Colo. 317, 32 P. 611
(1893) (section 12 of Colorado's Enabling Act). Here, the purpose for the Fund is "erecting public buildings."
Courts have reached different conclusions regarding how narrowly or strictly to interpret the term "erecting": some limit its meaning to totally new construction of buildings, see,e.g., Turturro v. Calder, 307 Mass. 159,29 N.E.2d 744 (1940); others broaden it to encompass repair so substantial that it effectively creates a new and different building,see, e.g., Bryant v. Board ofExaminers, 130 Mont. 512, 305 P.2d 340, 345 (1957) (Montana Enabling Act); others still liberally construe it to encompass costs for matters which are incidentally necessary to accomplishing the Act's objective, see, e.g.,State v. Potts, 141 Wn. 110, 250 P. 1090, 1092-93
(1926) (Washington State Enabling Act provision permits providing furniture and furnishings for public buildings); Boardof County Commissioners v. McCulloh, 52 N.M. 210,195 P.2d 1005, 1009 (1948) (New Mexico state constitutional provision permits purchase of land and equipment for public buildings).
In my opinion, the last view mentioned above is better in terms of common sense and practical logic. Renovation and repair are almost universally less expensive than new construction. It would be illogical, then, to find the statutory language of the Act would always require the more expensive alternative.
 [T]here is an implied authority to use the income from the land grant to repair a building already erected. In other words there is implied authority to keep the building erected or constructed.
. . . .
 `To hold that a county whose court house, with proper repairs and additions, could be rendered commodious and useful in every respect, must pull it down and build an entirely new one, would be to charge our law-givers with an intent to encourage an unnecessary expenditure of the public money. . . . [W]hen the language used is capable of including authority to do an act not mentioned in terms, such construction of it is greatly aided by considerations of public advantage which it would certainly produce.'
Bryant, 305 P.2d at 348 (Angstman, J., dissenting).
In my view, the most reasonable way to construe the statutory language at issue here is to permit moneys in the Fund to be used for erecting, or keeping erected, public legislative or judicial buildings.
a. Your second question is how moneys are obtained from the Fund. The Board deposits proceeds from all public land trusts with the State Treasurer. See §§ 36-1-113, C.R.S. (1989 Supp.); 36-1-118(1), C.R.S. (1973); and, 24-36-103(1), C.R.S. (1988). The method of obtaining public money from the State Treasury is governed by certain constitutional provisions contained in article V of the Colorado Constitution.
 No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law, and any amount disbursed shall be substantiated by vouchers signed and approved in the manner prescribed by law.
Colo. Const. art. V., § 33.
Therefore, moneys from the Fund can be obtained through the usual legislative appropriation processes, see In ReCanal Certificates, 34 P. at 276, for instance in the annual general appropriation bill (the Long Bill) or in another bill with an appropriation section.
SUMMARY
In making the grant of public lands to the State of Colorado, the United States Congress specified that the grant was for the purpose of erecting public buildings in Denver for legislative or judicial purposes. In my view, trust moneys emanating from the sale or lease of those public lands may be utilized for matters necessarily incidental to the purpose of the grant,i.e., to erect public buildings for use by the legislature or judiciary. These matters would, for instance, include physical repair and maintenance of those buildings.
Moneys from the Fund can be obtained through the usual legislative appropriation process.
Sincerely,
 DUANE WOODARD Attorney General
PUBLIC FUNDS FEDERAL GRANTS TRUST FUNDS
§ 24-36-103(1), C.R.S. (1988) § 36-1-113, C.R.S. (1989 Supp.) § 36-1-118(1), C.R.S. (1973)
Colo. Const. art. V, § 33 Colo. Const. art. IX, §§ 9-10 (1976 1910)
State Treasurer State Board of Land Commissioners
In making the grant of public lands to the State of Colorado, the United States Congress specified that the grant was for the purpose of erecting public buildings in Denver for legislative or judicial purposes. In my view, trust moneys emanating from the sale or lease of those public lands may be utilized for matters necessarily incidental to the purpose of the grant,i.e., to erect public buildings for use by the legislature or judiciary. These matters would, for instance, include physical repair and maintenance of those buildings.
Moneys from the Fund can be obtained through the usual legislative appropriation process.